# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA UROLOGICAL INSTITUTE, P.C.,<br><br>               Plaintiff and<br>               Appellee,<br><br>      v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>               Defendants and<br>               Appellants. | Case No. 3:20-cv-00170-SLG<br><br>Bankruptcy Adv. No. 20-90004 GS |

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 6 is Plaintiff Alaska Urological Institute's ("AUI") Motion for Summary Judgment. Defendants United States Small Business Administration ("SBA"); Jovita Carranza, Administrator of the SBA; Steven Mnuchin, Secretary for the Treasury; and the United States responded in opposition at Docket 9. Plaintiff replied at Docket 13. Also before the Court at Docket 10 is Defendants' Motion for Summary Judgment. Plaintiff responded in opposition at Docket 13. Defendants replied at Docket 16. The Court heard argument on the motions on August 14, 2020.

## BACKGROUND

### A.     The Paycheck Protection Program

On March 27, 2020, in response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ( "CARES Act").[1] Among other things, the CARES Act seeks to preserve American jobs in the face of the economic uncertainty created by the global pandemic.[2]  Title I of the Act—the Keeping American Workers Paid and Employed Act—created the Paycheck Protection Program ("PPP") to be administered by the SBA.[3]  The PPP was codified in the SBA's existing Section 7(a) loan program at 15 U.S.C. § 636(a)(36).[4] Of the existing provisions of Section 7(a), § 636(a)(6) is most relevant to the parties' dispute and provides that: "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment."[5]

The PPP provides that an eligible small business may obtain a guaranteed loan to cover authorized expenses, including payroll costs, mortgage interest, rent, and utilities.[6]  The PPP loans may be forgiven if the borrower certifies that a

---

[1] *See* CARES Act, P.L. 116–136, 134 Stat. 281 (2020).

[2] *See* 166 Cong. Rec. S1975, 76 (daily ed. Mar. 24, 2020) (statement of Sen. McConnell); 166 Cong. Rec. E. E343 (daily ed. Mar. 31, 2020) (statement of Rep. Eshoo).

[3] *See* CARES Act § 1102; 15 U.S.C. § 636(a)(36).

[4] *See* P. L. 116–136, § 1102(a).

[5] 15 U.S.C. § 636(a)(6).

[6] 15 U.S.C. § 636(a)(36)(F)(i).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 2 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 2 of 38

specified percentage of the loan was used for those authorized purposes.[7] The loans are made by participating lenders and guaranteed by the SBA; if the loan qualifies for forgiveness, the SBA pays the lender the amount forgiven plus any interest accrued.[8]

The CARES Act granted the SBA emergency rulemaking authority, allowing it to issue regulations to carry out the PPP without adherence to standard notice requirements.[9] Moreover, the CARES Act instructs that no later than 15 days after its enactment, the SBA "shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements" of the Administrative Procedure Act ("APA").[10] Pursuant to its emergency rulemaking authority, the SBA published four interim final rules concerning the PPP, portions of which are relevant to the current dispute.

The First Interim Rule was issued on April 2, 2020, and among other things, provides that:

> The intent of the Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program. For example, for loans made under the PPP, SBA will not require the lenders to comply with section 120.150 "What are SBA's lending criteria?." SBA will allow lenders to rely on

---

[7] CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(G); 15 U.S.C. § 9005(b).

[8] CARES Act § 1106; 15 U.S.C. § 9005(b), (c)(3).

[9] CARES Act § 1114; 15 U.S.C. § 9012.

[10] 15 U.S.C. § 9012.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 3 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 3 of 38

certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness.[11]

The First Interim Rule outlines the program's eligibility requirements.[12] In relevant part, it provides:

> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and
>
> i. You are: A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
>
> ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC.
>
> . . .
>
> You must also submit such documentation as is necessary to establish eligibility such as payroll processor records, payroll tax filings, or Form 1099-MISC, or income and expenses from a sole proprietorship. For borrowers that do not have any such documentation, the borrower must provide other supporting documentation, such as bank records, sufficient to demonstrate the qualifying payroll amount.[13]

---

[11] Business Loan Program Temporary Changes; Paycheck Protection Plan, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020) [hereinafter "First Interim Rule"].

[12] *Id.*

[13] *Id.*

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 4 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 4 of 38

It also explains that some business are ineligible even if they meet the eligibility requirements:

> You are ineligible for a PPP loan if, for example: i. You are engaged in any activity that is illegal under Federal, state, or local law; ii. You are a household employer (individuals who employ household employees such as nannies or housekeepers); iii. An owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years; or iv. You, or any business owned or controlled by you or any of your owners, has ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted within the last seven years and caused a loss to the government.[14]

In addition to these eligibility requirements, the First Interim Rule provides information about how much an applicant can borrow, what qualifies as payroll costs, how the PPP loans can be used, the interest rate and maturity date of the loan, the requirements for loan forgiveness, the consequences of misusing the loans, the certifications required by the applicant, and other such details.[15] Subsection (q) of the rule explains how to submit an application: applicants must submit SBA Form 2483 (the "PPP Application Form").[16]  The SBA published the PPP Application Form along with the First Interim Rule; among other questions, the form asks whether the applicant or any owner of the applicant is involved in

---

[14] *Id.*

[15] *Id.* at 20,812–14.

[16] *Id.* at 20,811.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 5 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 5 of 38

any bankruptcy, and instructs that if so, the loan will not be approved.[17] The parties refer to this exclusion of debtors from the PPP program as the Bankruptcy Exclusion, and its validity lies at the heart of the parties' dispute.[18] The First Interim Rule establishes the disputed Bankruptcy Exclusion by reference to Form 2483, but does not otherwise mention it or explain it.

The First Interim Rule also provides information for lenders, including who is eligible to make the loans, the terms for loan underwriting, and other details about the fees they receive, the terms and conditions, and whether loans can be resold or purchased in advance.[19] Relevant here, the First Interim Rule instructs that with respect to underwriting, the lenders need only:

> i. Confirm receipt of borrower certifications contained in Paycheck Protection Program Application form issued by the Administration;
>
> ii. Confirm receipt of information demonstrating that a borrower had employees for whom the borrower paid salaries and payroll taxes on or around February 15, 2020;
>
> iii. Confirm the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing the payroll documentation submitted with the borrower's application; and
>
> iv. Follow applicable SBA requirements.[20]

---

[17] Docket 4-1 at 62 (AUI Completed Application Form 2483 dated May 22, 2020); Docket 4-1 at 70 (AUI Completed Application Form 2483 dated June 4, 2020).

[18] Docket 6 at 29; Docket 10 at 15.

[19] First Interim Rule, 85 Fed. Reg. 20,811, 20,815–16 (Apr. 15, 2020).

[20] *Id.* at 20,815.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 6 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 6 of 38

The Second and Third Interim Rules, published April 15, 2020, and April 20, 2020, respectively, are likewise silent as to the disputed Bankruptcy Exclusion.[21] However, on April 28, 2020, the SBA published the Fourth Interim Rule, which addresses the Bankruptcy Exclusion for the first time, stating: "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding . . . the applicant is ineligible to receive a loan."[22] By way of explanation, the Fourth Interim Rule provides:

> [T]he Administrator, in consultation with the secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.[23]

In connection with this action, the SBA filed a declaration by John A. Miller, dated June 5, 2020 ("Miller Declaration").[24] Mr. Miller is an employee of the SBA and declares that he is "duly authorized to make the statements contained in [the Miller

---

[21] *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,817 (Apr. 15, 2020) [hereinafter "Second Interim Rule"] and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21,747 (Apr. 20, 2020) [hereinafter "Third Interim Rule"].

[22] Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020) [hereinafter "Fourth Interim Rule"].

[23] *Id.*

[24] Docket 13-3.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 7 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 7 of 38

Declaration] to explain the basis for the SBA's" Bankruptcy Exclusion.[25]  In relevant part, the Miller Declaration provides:

> The reason for including the bankruptcy exclusion in form 2483 was that SBA in consultation with Treasury determined that in order to meet the challenge of rescuing the economy from the effects of the Covid-19 virus pandemic, loan assistance authorized by the Cares Act had to be provided as expeditiously as possible with as little as possible underwriting. Since a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for [debtor-in-possession] financing, as well the possible resolution of a host of other issues and the prospect of the incurring of fees by the lender in monitoring the bankruptcy proceeding, it was determined that the wording of Form 2483 would be expeditious and less likely to slow the administration of the program and less likely to require the expenditure of additional time, effort and other resources. The purpose of a PPP loan is to help small businesses pay their employees and maintain operations to allow them to restart quickly over the next few months. SBA decided that this purpose would not be served by including all bankruptcies. Certain creditors, including administrative creditors, could assert claims to the PPP loan funds that would interfere with its authorized uses and the requirements for PPP loan forgiveness. SBA, in consultation with the Department of Treasury, determined there should be one streamlined rule that applies to all debtors in bankruptcy to avoid the need for case by case reviews.[26]

## B.    Procedural History

On March 25, 2020, AUI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[27]  AUI provides medical services to the public "in the areas of urology, oncology, radiation oncology, surgery, breast reconstructive and

---

[25] Docket 13-3 at 2, ¶ 1.

[26] Docket 13-3 at 5, ¶ 17.

[27] Docket 6 at 5.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 8 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 8 of 38

cosmetic surgery, pulmonology and hematology, and integrative medicine."[28]  AUI also conducts clinical research, vaccines studies, and drug development.[29]  At the time it filed its petition for Chapter 11, AUI employed 84 persons and saw 25,000 patients a year.[30]

On May 22, 2020, in the wake of the CARES Act, AUI filed an application for PPP with the First National Bank Alaska.[31]  The application was denied because AUI truthfully certified that it was in bankruptcy proceedings.[32]  AUI filed a second application, on June 4, 2020, with Nuvision Federal Credit Union, dba Denali.[33]  Again, the application was rejected because AUI was in bankruptcy.[34]

On June 17, 2020, AUI commenced this adversary bankruptcy action against Defendants in the U.S. Bankruptcy Court for the District of Alaska,[35] and immediately moved for a temporary restraining order and preliminary injunctive relief to enjoin the denial of its applications based solely on the Bankruptcy

---

[28] Docket 4-3 at 4, ¶ 2 (Second Declaration of Tina Presley).

[29] Docket 4-3 at 4, ¶ 2 (Second Declaration of Tina Presley).

[30] Docket 4-3 at 4, ¶ 2 (Second Declaration of Tina Presley).

[31] Docket 4-3 at 4, ¶ 3 (Second Declaration of Tina Presley); Docket 4-1 at 62 (AUI Completed Application Form 2483 dated May 22, 2020).

[32] Docket 4-3 at 4, ¶ 3 (Second Declaration of Tina Presley).

[33] Docket 4-3 at 4, ¶ 3 (Second Declaration of Tina Presley); Docket 4-1 at 70 (AUI Completed Application Form 2483 dated June 4, 2020).

[34] Docket 4-3 at 4, ¶ 3 (Second Declaration of Tina Presley).

[35] Docket 4-1 at 9 (Complaint).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 9 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 9 of 38

Exclusion.[36]  AUI alleged that (1) the Bankruptcy Exclusion was unlawful under APA 5 U.S.C. § 706(2)(C), because it had been promulgated in excess of the SBA's statutory authority; (2) the exclusion was unlawful under 5 U.S.C. § 706(2)(A), because it is arbitrary and capricious; and (3) the exclusion violated 11 U.S.C. § 525(a)'s prohibition against discriminatory treatment of bankruptcy debtors.[37]

On June 19, 2020, Defendants opposed the motion for injunctive relief and filed a motion for withdrawal of reference, contending that the issues required statutory interpretation of non-bankruptcy law and should be heard by this Court.[38] On June 22, 2020, at a hearing on AUI's motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"), SBA voluntarily agreed to set aside the requested funds, thereby resolving AUI's motion for a TRO.[39]  On June 26, 2020, the bankruptcy court issued an oral ruling granting AUI's motion for a preliminary injunction, finding that AUI had a high probability of success on its APA claims but not on its discrimination claim under 11 U.S.C. § 525(a).[40]  The injunction

---

[36] Docket 4-1 at 81 (Motion for Temporary Restraining Order and Preliminary Injunction).

[37] Docket 4-1 at 87–88.

[38] Docket 4-1 at 224 (Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order);  Docket 4-1 at 214, 215 (Motion for Withdrawal of Reference).

[39] Docket 4-1 at 500 (Order on Temporary Restraining Order and Modifying Deadlines for Hearing on Motion for Preliminary Injunction).

[40] Docket 14 at 18, 19 (Excerpt of Transcript of Preliminary Injunction Ruling); Docket 4-6 at 9–11 (Order Granting Request for Preliminary Injunction).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 10 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 10 of 38

authorized AUI to answer "no" to the PPP application's question about whether it was in bankruptcy.[41]   Thereafter, AUI filed a PPP application with Fundera, and received a package of loan documents from First Home Bank.[42]   On July 15, 2020, AUI received $1,256,700 from First Home Bank; those funds are being held in trust pending a decision from this Court as well as authorization of the use of funds by the bankruptcy court.[43]

On July 10, 2020, Defendants filed a notice of appeal of the preliminary injunction and requested that this Court, rather than the Bankruptcy Appellate Panel, hear the appeal.[44]   On July 13, 2020, AUI withdrew its objection to the withdrawal of the reference and on July 14, 2020, the bankruptcy court entered a recommendation that this Court withdraw the reference of the underlying adversary action and also hear the appeal.[45]   On July 31, 2020, this Court granted SBA's motion for withdrawal of reference and entered the parties' proposed expedited briefing schedule.[46]   As provided for in the schedule, the parties filed cross-motions for summary judgment and argued the motions to the Court on August 14, 2020.

---

[41] Docket 4-6 at 10 (Order Granting Request for Preliminary Injunction).

[42] Docket 7 at 2–3, ¶¶ 4–9 (Declaration of Tina Presley re: PPP Loan).

[43] Docket 7 at 3, ¶ 11 (Declaration of Tina Presley re: PPP Loan).

[44] Docket 4-7 at 12 (Notice of Appeal Under 11 U.S.C. § 158 and Statement of Election).

[45] Docket 4-7 at 8 (Plaintiff's Withdrawal of Objection to Withdrawal of Reference); Docket 4-7 at 33–38 (Report and Recommendation).

[46] Docket 12.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 11 of 38

At oral argument, with agreement from the parties, the Court stayed the briefing on the appeal pending resolution of the summary judgment motions.

## LEGAL STANDARD

### I.  Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law.[47]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[48]

## DISCUSSION

The parties agree that there are no disputed facts and that the case is ripe for summary judgment.[49]  The parties disagree only as to whether (1) the SBA is protected from injunctive relief by sovereign immunity; (2) the SBA exceeded its

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[48] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

[49] *See* Docket 6 at 10 and Docket 9 at 19, 20–21.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 12 of 38

statutory authority in promulgating the Bankruptcy Exclusion; and (3) the SBA's

Bankruptcy Exclusion is arbitrary and capricious.[50]

## I.    Sovereign Immunity

As a threshold issue, the parties dispute whether the SBA is subject to

injunctive relief.  In creating the SBA, Congress narrowed the SBA's immunity in

15 U.S.C. § 634(b)(1), which provides:

> **Powers of the Administrator**.  In the performance of, and with respect to, the functions, powers, and duties vested in him by this Act the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property. . . .[51]

Defendants contend that § 634(b)(1) is an absolute bar to injunctive relief.  But AUI

insists that in spite of the no-injunction language, the SBA is subject to injunctive

relief when it exceeds its agency authority.[52]

In support of its interpretation, AUI relies on the First Circuit's decision in

*Ulstein Maritime, Ltd. v. United States*, which held:

---

[50] *See generally* Docket 6 and Docket 10.  AUI has withdrawn its claim that the SBA's Bankruptcy Exclusion rule violated 11 U.S.C. § 525's prohibition of discrimination against debtors.  Docket 13 at 26 ("Debtor has elected not to pursue its claim that the Bankruptcy Exclusion violates 11 U.S.C. § 525.").  Accordingly, the Court will not address it.

[51] Small Business Act, P.L. 85-536, 72 Stat. 348 (1958) (codified at 15 U.S.C. § 634).

[52] Docket 6 at 14–17.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 13 of 38

> The no-injunction language of [section 634(b)] protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction.  In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.[53]

Thus, as AUI explains it, where "a disgruntled bidder, borrower, or other party involved in a particular transaction, asserts that SBA exercised its discretion poorly . . . in that particular transaction," § 634(b)(1) protects the SBA from injunctive relief.[54]  But, in contrast, AUI contends that it does not protect the SBA from injunctive relief where the SBA's rulemaking exceeds its agency authority.[55]

Although AUI acknowledges that courts are divided on the scope of the no-injunction language, it contends that only the Fifth Circuit has held that § 634(b)(1) is an absolute bar to injunctive relief and that in the other instances where courts enforced § 634(b)(1) immunity, the agency was undisputedly operating within the scope of its authority.[56]  AUI emphasizes that while the Ninth Circuit has not ruled on the scope of sovereign immunity under § 634(b)(1), the district court for the

---

[53] Docket 6 at 14 (alteration in original) (quoting 833 F.2d 1052, 1056 (1st Cir. 1987)).  AUI contends that other courts have expressed similar views.  Docket 6 at 15 (citing *Okla. Aerotronics v. United States*, 661 F.2d 976, 977 (D.C. Cir. 1981); *Cavalier Clothes v. United States*, 810 F.2d 1108, 1112 (Fed. Cir. 1987)).

[54] Docket 13 at 9.

[55] Docket 13 at 9.

[56] Docket 13 at 7–8 (citing *Hidalgo Cty. Emergency Serv. Found. v. Carranza*, 962 F.3d 838, 840–41 (5th Cir. 2020); *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975) (commenting that other cases "suggest[] that injunctive relief may be obtained if the Administrator exceeds his authority.")).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 14 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 14 of 38

Central District of California has concluded that injunctive relief is available where the SBA acts beyond the scope of its authority.[57]  In *Dubrow v. Small Business Administration*, the plaintiffs brought suit for injunctive relief on behalf of a class of people whose applications for disaster relief loans from the SBA had been denied.[58]  The SBA maintained that § 634(b) precluded injunctive relief against it, but the district court disagreed, stating that: "it should be clear . . . that when the Administrator acts beyond the scope of his authority, 15 U.S.C. § 634(b) does not preclude injunctive action."[59]  The court reasoned that "the language precluding injunctive action against the administrator is qualified by the introductory clause of 15 U.S.C. § 634(b) '[] In the performance of, and with respect to[,] the functions, powers[,] and duties vested in him by this [Act] . . . .'"[60]

AUI also cites a handful of recent decisions from bankruptcy courts across the country that, when faced with similar challenges to the SBA's Bankruptcy Exclusion, held that an injunction is allowable where the SBA acts beyond its agency authority.[61]

---

[57] Docket 6 at 15 (citing *Dubrow v. Small Bus. Admin.*, 345 F.Supp. 4 (C.D. Cal. 1972)).

[58] 345 F.Supp. at 5.

[59] *Id.* at 7.

[60] *Id.* at 7 n.5.

[61] Docket 6 at 16–17 (citing *In re Vestavia Hills, Ltd.,* Adv. No. 20-90073-LA, 2020 WL 3581019 (Bankr. S.D. Cal. June 26, 2020); *In re Gateway Radiology Consultants*, Adv. No. 8:20-ap-00330-MGW, 2020 WL 3048197 (Bankr. M.D. Fla. June 8, 2020); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, Case. Nos. 20-C-0601, 20-C-634, 2020 WL 2088637 (E.D. Wis. May 1, 2020)).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 15 of 38

For their part, Defendants contend that the statute's meaning is plain from its language, thereby precluding the Court from further statutory interpretation.[62] Defendants add that the Supreme Court of the United States instructs that waivers of sovereign immunity should be narrowly construed in favor of the sovereign, and that the waiver at issue clearly does not extend to injunctive relief.[63]  Defendants contend there is no significance to the introductory clause of § 634(b)(1) as it is the introductory phrase for fourteen enumerated powers and therefore does not serve to narrow the "no injunction" language.[64]

Defendants maintain that the Fifth and Tenth Circuits have each interpreted § 634(b)(1) as an absolute bar to injunctive relief,[65] and emphasize that the Fifth Circuit recently invoked the SBA's immunity to overturn a district court's injunction against the SBA prohibiting application of the Bankruptcy Exclusion.[66] Defendants contend that *Ulstein* and its progeny are inconsistent with the statute's language, enlarge jurisdiction beyond what the language requires, and ignore principles of

---

[62] Docket 9 at 23 (citing *Bostock v. Clayton Cty.*, ___ U.S. ___,140 S. Ct. 1731, 1754 (2020)).

[63] Docket 9 at 22–23 (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983); *United States v. Sherwood*, 312 U.S. 584, 590 (1941)).

[64] Docket 9 at 24 (distinguishing *Dubrow v. Small Bus. Admin.*, 345 F.Supp. 4 (C.D. Cal. 1972)).

[65] Docket 9 at 22 (citing *Mar. v. Kleppe*, 530 F.2d 867, 869 (10th Cir. 1975); *Romeo v. United States*, 462 F.2d 1036, 1037–38 (5th Cir. 1972)).

[66] Docket 9 at 22 (citing *Hidalgo Cty. Emergency Serv. Found. v. Carranza*, 962 F.3d 838, 840–41 (5th Cir. 2020)).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 16 of 38

statutory construction dictated by the Supreme Court.[67] Indeed, Defendants maintain that *Ulstein*'s interpretive approach, which they contend relied on the statute's legislative history to infer a broad waiver of sovereign immunity,[68] was discredited when the Supreme Court recently reaffirmed that "[l]egislative history cannot supply a waiver that is not clearly evident from the language of the statute."[69] Lastly, Defendants challenge AUI's interpretation as limitless since any challenge to the SBA's rulemaking could be framed as unauthorized conduct.[70] Defendants conclude that contrary to AUI's assertions otherwise, § 634(b)(1) does not leave a plaintiff with no relief; it simply bars injunctive relief.[71]

The Court adopts the view that § 634(b)(1) does not shield the SBA from injunctive relief where the agency has exceeded its agency authority. Like the *Dubrow* court, this Court finds that the introductory language of § 634(b)—"[i]n the performance of, and with respect to, the functions, powers, and duties vested in him by this Act"—presumes that the Administrator is acting within her authority and qualifies the language precluding injunctive relief.[72] Moreover, Defendants

---

[67] Docket 9 at 23.

[68] *See Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1056–57 (1st Cir. 1987).

[69] Docket 16 at 5 (alteration in original) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).

[70] Docket 9 at 23–24.

[71] Docket 9 at 24.

[72] *See* 345 F.Supp. 4, 7 n.5 (C.D. Cal. 1972); *see also* Small Business Act, P.L. 85-536, 72 Stat. 348 (1958) (codified at 15 U.S.C. § 634).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 17 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 17 of 38

interpretation would prevent courts from enjoining agencies that have exceeded their authority even in cases of blatant constitutional violations; the Court agrees with those courts that have concluded that such a result would be "absurd."[73]

In the instant case, an injunction based on violations of the APA would "not interfere with agency functioning," but "merely require[] the SBA to function within the parameters created for it by Congress."[74] Accordingly, the Court concludes that the SBA cannot invoke sovereign immunity to avoid judicial review of unlawful agency action.

## II. Administrative Procedure Act Claims

AUI contends that the SBA's Bankruptcy Exclusion is unlawful because (1) it is arbitrary and capricious,[75] and (2) it exceeds the SBA's statutory authority.[76]

### A. 5 U.S.C. § 706(2)(A)

---

[73] *In re Gateway Radiology Consultants*, Adv. No. 8:20-ap-00330-MGW, 2020 WL 3048197, at *9 (Bankr. M.D. Fla. June 8, 2020); *see also Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, Case. Nos. 20-C-0601, 20-C-0634, 2020 WL 2088637, at *4 (E.D. Wis. May 1, 2020) ("[I]f provisions such as § 634(b)(1) meant that the agency could never be enjoined, then an agency could adopt unconstitutional policies and continue to follow them even after a court declared them unconstitutional . . . [including] a policy stating that it will extend small business loans only to companies owned by white men."); *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, Case No. 20-cv-10899, 2020 WL 2315880, at *7–8 (E.D. Mich. May 11, 2020) ("Plaintiffs here seek only 'to set aside unlawful agency action.'"); *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, Case Nos. CCB-20-1838, CCB-20-1736, 2020 WL 3546873, at *6 (D. Md. June 29, 2020) (distinguishing case law denying injunctions where "[n]either injunction related to the SBA in its rulemaking capacity").

[74] *In re Vestavia Hills, Ltd.,* Adv. No. 20-90073-LA, 2020 WL 3581019, at *5 (Bankr. S.D. Cal. June 26, 2020).

[75] Docket 6 at 21–36.

[76] Docket 6 at 17–21.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 18 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 18 of 38

Section 706(2)(A) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

AUI's threshold argument is straightforward: the Bankruptcy Exclusion is arbitrary and capricious because the record is devoid of agency reasoning. AUI contends that the Court's review of agency action is limited to the matters that the agency considered at the time of its decision, and that here, "there is no evidence of what the SBA actually considered, or exactly who at SBA actually did the considering."[77] AUI contends that there is "no administrative record whatsoever supporting the SBA's decision" to implement the Bankruptcy Exclusion.[78] Accordingly, it concludes that the Bankruptcy Exclusion is necessarily arbitrary and capricious: "if there is no stated rationale at all, then that action cannot be anything but arbitrary and capricious."[79] In support of its position, AUI quotes at length from the TRO and PI hearings, and subsequent order, of the bankruptcy court for the Western District of Washington in *Astria Health v. U.S. Small Business Administration*.[80] In evaluating the SBA's Bankruptcy Exclusion, the *Astria* court

---

[77] Docket 6 at 22–26 (discussing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, __ U.S. __, 140 S. Ct. 1891 (2020)).

[78] Docket 6 at 26.

[79] Docket 6 at 26.

[80] Docket 6 at 27–31. AUI attached to its motion the transcripts for the TRO and PI hearings in

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 19 of 38

Case 3:20-cv-00170-SLG    Document 18    Filed 08/20/20    Page 19 of 38

concluded that there was "essentially no administrative record supporting the ultimate conclusion" and that a "nonexistent record, by definition, cannot be sufficient to support any conclusion."[81]

AUI contends that neither the interim rules nor the Miller Declaration are part of the administrative record. With regards to the interim rules, AUI contends that the administrative record is meant to justify the agency action, not be the action, reasoning that otherwise the action will always be an administrative record that justifies itself.[82] Separately, AUI urges the Court to reject the Miller Declaration as an inappropriate post-hoc rationalization,[83] emphasizing that multiple courts have done just that.[84] AUI contends that the disparity between an earlier version of the Miller Declaration (dated May 14, 2020), and the one filed in this action (dated June 5, 2020) reveals that the justifications therein for the Bankruptcy Exclusion are post-hoc rationalizations.[85] Specifically, AUI highlights the fact that the earlier

---

that case as exhibits. *See* Docket 6 at 39–56; Docket 6 at 57–105.

[81] *Astria Health v. U.S. Small Bus. Admin.*, Adv. No. 20-0016-WHL, 2020 Bankr. LEXIS 1720, at *21 (Bankr. E.D. Wash. June 10, 2020)). AUI also relies on *In re: Roman Catholic Church of the Archdiocese of Santa Fe*, in which the Bankruptcy Court for the District of New Mexico "held that the SBA bankruptcy exclusion rule was arbitrary and capricious." Docket 6 at 32 (citing 615 B.R. 644, 654 (Bankr. D.N.M. 2020)).

[82] Docket 13 at 22.

[83] Docket 6 at 33.

[84] Docket 6 at 33–34 (citing *PCT Int'l v. Carranza,* Adv. No. 2-20-00118 (Bankr. D. Ariz. June 12, 2020)); Docket 13 at 23 (citing *Tradeways, Ltd. v. U.S. Dept. of the Treasury*, Case No. ELH-20-1324, 2020 WL 3447767, at *15 n.8 (D. Md. June 24, 2020)). A transcript of the oral decision in *PCT Int'l* is in this record at Docket 4-1 at 378–416.

[85] Docket 13 at 24. AUI attached the May 14, 2020 declaration to its filing at Docket 13. *See*

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 20 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 20 of 38

declaration states that the "purpose [of the PPP] would not be served in a chapter 11 liquidation or in a chapter 7 case," whereas the declaration filed in this case states that the "purpose would not be served by including all bankruptcies."[86]  AUI contends that this change demonstrates that the SBA realized that the earlier Miller Declaration did not indicate that PPP loans were being denied to Chapter 11 reorganization debtors and changed the language to provide justification for the Bankruptcy Exclusion.[87]

AUI also challenges the Miller Declaration on substantive grounds.[88]  It contends that the Miller Declaration is devoid of any evidence that the SBA communicated with the Secretary of the Treasury or that any real analysis was undergone in those alleged communications.[89]  It adds that the Miller Declaration reveals that the SBA relied on factors that Congress had not intended it to consider—namely, the risk of unauthorized use of funds and non-repayment—and that it establishes that the SBA has no expertise in making loans to debtors and thus no basis on which to conclude that debtors posed those risks or that excluding

---

Docket 13-4.  The May 14, 2020 declaration was filed in *Springfield Medical Care Center Systems, Inc. v. Carranza*, Adv. No. 20-01004 (Bankr. D. Vt. May 14, 2020).

[86] Docket 13 at 24 (first quoting Docket 13-4; then quoting Docket 13-3).

[87] Docket 13 at 24–25.

[88] Docket 6 at 33.

[89] Docket 6 at 35 (citing *PCT Int'l v. Carranza,* Adv. No. 2-20-00118 (Bankr. D. Ariz. June 12, 2020), in this record at Docket 4-1 at 368).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 21 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 21 of 38

them would streamline the process.[90]  AUI maintains that the Miller Declaration provides no explanation for the absence of mention of the Bankruptcy Exclusion in the first three interim rules, and makes no effort to reconcile the Bankruptcy Exclusion with the statement in the Third Interim Rule that "no creditworthiness assessment is required for PPP loans."[91]

Defendants dispute that the Bankruptcy Exclusion is arbitrary and capricious.  Defendants contend that, contrary to AUI's assertions, the relevant administrative record consists not only of the SBA's four interim rules, but also the Miller Declaration.[92]  They maintain that a declaration of agency policy is an acceptable method to convey the reasoning behind the agency's decision-making, especially where, as here, there was limited time to promulgate the rules.[93]  They dispute that either the Fourth Interim Rule or the Miller Declaration is an invalid post-hoc rationalization, contending instead that both are valid subsequent explanations of the decisions made in the First Interim Rule and Application Form 2483.[94]  Defendants maintain that while an agency may not make a decision for

---

[90] Docket 6 at 34–35 (citing *PCT Int'l v. Carranza,* Adv. No. 2-20-00118 (Bankr. D. Ariz. June 12, 2020), in this record at Docket 4-1 at 368).

[91] Docket 6 at 35–36 (quoting Third Interim Rule, 85 Fed. Reg. 21,747, 21,751 (Apr. 20, 2020)).

[92] Docket 9 at 43–44, 46.  Defendants acknowledge that the record is small, but note that the SBA only had fifteen days to issue the regulations.  Docket 9 at 46–47.

[93] Docket 16 at 14–15 (citing *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996)).

[94] Docket 16 at 14–16 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, __ U.S. __, 140 S. Ct. 1891, 1907 (2020)).  Defendants contend that the differences between the two Miller Declarations highlighted by AUI are explained by the fact that the earlier declaration was a

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 22 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 22 of 38

one reason and then attempt to justify it with a different reason later, it can offer a fuller explanation as long as it reflects the agency's reasoning at the time of the agency action.[95]

Defendants contend that the record shows that the SBA's Bankruptcy Exclusion decision was based on consideration of multiple factors including:

> (a) Congress's objective of providing immediate and substantial relief to small businesses, Miller Decl. ¶¶ 5, 17; (b) Congress's decision to implement the PPP under section 7(a), *id.* ¶ 6; (c) Congress's decision not to alter section 7(a)'s sound value requirement, *id.* ¶¶ 6–13; (d) the SBA's decades-long focus on bankruptcy status as relevant to "sound value" for section 7(a) loan guarantees, *id.* ¶¶ 8–12; (e) the need to execute Congress's objective through a two-page form reliant upon borrower certifications, *id.* ¶ 17; and (f) the risk of lending to borrowers in bankruptcy. *Id.*[96]

Based on the foregoing, Defendants contend that "the agency's path to its ultimate conclusion may reasonably be discerned," adding that "[f]or example, the SBA determined that 'a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for [debtor-in-possession] financing, as well as the possible resolution of a host of other issues.'"[97] Defendants add that the Bankruptcy Exclusion was "a way to 'meet the challenge of rescuing the economy'

---

personal affidavit, whereas the one at issue in this case is an official agency statement wherein Mr. Miller was authorized to make statements to explain the SBA's decision-making. Docket 16 at 16–17.

[95] Docket 9 at 44 (citing *Regents of the Univ. of Cal.*, 140 S. Ct. at 1909–10).

[96] Docket 9 at 42–43.

[97] Docket 9 at 43 (alteration in original) (quoting Docket 13-3 at 5, ¶ 17).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 23 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 23 of 38

while providing loan guarantees 'as expeditiously as possible with as little as possible underwriting'" and that it "sought to reduce the risk that PPP loans would not be used as Congress intended."[98]  As another example, Defendants suggest that "the SBA concluded that the PPP's placement within the section 7(a) program meant its historical consideration of an applicant's bankruptcy status should continue."[99]  Defendants contend that since lenders do not typically, if ever, extend Section 7(a) loans to debtors in active bankruptcy, the SBA's Bankruptcy Exclusion plausibly relied on its long-standing expertise in guaranteeing Section 7(a) loans.[100]  Thus, Defendants maintain that the record shows that the SBA examined the relevant data and articulated a satisfactory explanation for the Bankruptcy Exclusion that connects its findings to the rule.[101]

Defendants further contend that based on the interim rules alone, the Court should conclude that the agency examined the relevant data including "(1) the risks debtors in bankruptcy pose to the PPP, (2) an appropriate application form to streamline the loan process, and (3) the certifications necessary for the agency to ensure its loan guarantees complied with existing law," and that it "rationally concluded that the bankruptcy exclusion . . . allowed the SBA to provide relief to

---

[98] Docket 9 at 43 (quoting Docket 13-3 at 5, ¶ 17).

[99] Docket 9 at 43 (citing Docket 13-3 at 4, ¶¶ 12–13).

[100] Docket 9 at 43.

[101] Docket 9 at 43–44.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 24 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 24 of 38

America's small businesses expeditiously and in compliance with section 7(a) statutory requirements and congressional intent."[102]  They maintain that the First Interim Rule provides the reasoning behind the Bankruptcy Exclusion: "namely, to 'streamlin[e] the requirements of the regular 7(a) loan program.'"[103]  Thus, the First Interim Rule provides that lenders can rely on certifications of the borrower to determine eligibility and limit underwriting to a review of the PPP Application Form (which includes the Bankruptcy Exclusion.).[104]  Defendants draw the following conclusion:

> [T]he SBA's First Interim Final Rule expressly precludes debtors in bankruptcy from obtaining PPP loan guarantees and explains the reasoning behind the bankruptcy exclusion; namely to 'streamlin[e] the requirements of the regular 7(a) loan program'—i.e., to truncate section 7(a) underwriting requirements—in order to provide PPP loan guarantees expeditiously and consistent with congressional intent.[105]

They add that the Fourth Interim Rule then provides detail to this reasoning by explaining that the Administrator and Secretary of the Treasury had concluded that

---

[102] Docket 9 at 47. Defendants contend that, contrary to AUI's position, rules are part of the administrative record. Defendants explain that, as part of the traditional notice-and-comment rulemaking process, agencies publish rules after the notice period is over that respond to comments and explain the basis and purpose of the rule and that these explanations are acceptable statements of agency decision-making.  Docket 16 at 14–15.

[103] Docket 9 at 45 (quoting First Interim Rule, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020)).

[104] Docket 9 at 45.

[105] Docket 9 at 45 (quoting First Interim Rule, 85 Fed. Reg. at 20,812).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 25 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 25 of 38

providing PPP loans to debtors would present an unacceptably high risk of unauthorized use of funds or non-repayment of unforgiven loans.[106]

The Court's review of agency action under § 706(2) is narrow; a court is not to substitute its own judgment for that of the agency.[107] "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[108] As the Ninth Circuit explained:

> ['An] agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'[109]

It is undisputed that "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'"[110] As Defendants correctly note, the relevant agency action here is the SBA's promulgation of the First Interim Rule, which implements the Bankruptcy Exclusion by reference to Form 2483, the PPP

---

[106] Docket 9 at 45–46 (citing Fourth Interim Rule, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020)).

[107] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[108] *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S 156, 168 (1962)).

[109] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (alteration in original) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[110] *Regents of the Univ. of Cal.*, 140 S. Ct. at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 26 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 26 of 38

Application Form.[111]   The Fourth Interim Rule and the Miller Declaration may elaborate on the Bankruptcy Exclusion, but they are not the agency actions under consideration.

The Court begins its analysis with the First Interim Rule.  Notably, the First Interim Rule does not expressly mention the Bankruptcy Exclusion.   Rather, section 2(q) of the rule provides:

> What forms do I need and how do I submit the application? The applicant must submit SBA Form 2483 (Paycheck Protection Program Application Form) and payroll documentation, as described above. The lender must submit SBA Form 2484 (Paycheck Protection Program Lender's Application for 7(a) Loan Guaranty) electronically in accordance with program requirements and maintain the forms and supporting documentation in its files.[112]

In turn, Form 2483, published separately by the SBA, asks "[i]s the Applicant or any owner of the Applicant . . . presently involved in any bankruptcy?"[113] It instructs that the loan will not be approved if the answer is yes.[114]  Thus, through reference to the PPP Application Form 2483, the Bankruptcy Exclusion was promulgated as part of the First Interim Rule.

---

[111] Docket 16 at 14.

[112] *Id.*

[113] Docket 4-1 at 62 (AUI Completed Application Form 2483 dated May 22, 2020); Docket 4-1 at 70 (AUI Completed Application Form 2483 dated June 4, 2020).

[114] Docket 4-1 at 62 (AUI Completed Application Form 2483 dated May 22, 2020); Docket 4-1 at 70 (AUI Completed Application Form 2483 dated June 4, 2020).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 27 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 27 of 38

The Court finds that neither the First Interim Rule nor Form 2483 purports to explain the SBA's decision to implement the Bankruptcy Exclusion. Indeed, although the First Interim Rule contains a section on applicant eligibility and a section on ineligibility, neither section makes mention of bankruptcy.[115] Undeterred by this, Defendants contend that the First Interim Rule does in fact give a reason for the Bankruptcy Exclusion: the SBA wanted to streamline the requirements of the regular Section 7(a) loan program to deliver rapid relief, as Congress intended.[116] Defendants rely on the First Interim Rule's language that "[t]he intent of the Act is that SBA provide relief to America's small businesses expeditiously, which is expressed in the Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program."[117] The Bankruptcy Exclusion purportedly aims to achieve this streamlining.

The Court is not persuaded that this streamlining language—nestled in the general background section of the rule—can reasonably be understood as the SBA's explanation for the Bankruptcy Exclusion, which is created only by the reference to Form 2483 in an entirely different section of the rule. Accordingly, the Court agrees with AUI that the First Interim Rule does not contain any reason or explanation for the Bankruptcy Exclusion and that on this basis alone, the Court

---

[115] First Interim Rule, 85 Fed. Reg. at 20,812..

[116] Docket 9 at 45.

[117] Docket 9 at 45 (quoting First Interim Rule, 85 Fed. Reg. at 20,812.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 28 of 38

Case 3:20-cv-00170-SLG    Document 18    Filed 08/20/20    Page 28 of 38

could conclude that the SBA did not engage in reasoned decision-making as required by 5 U.S.C. § 706(2)(A).[118]

Defendants contend that the link between "streamlining" and the Bankruptcy Exclusion is illuminated by the Fourth Interim Rule, which provides:

> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.[119]

Defendants explain that the SBA was required under § 636(a)(6) to ensure that the PPP loans were of sound value, but realized that traditional underwriting was not feasible in light of Congress's expeditious relief mandate; thus, the SBA opted for the blunter but more efficient Bankruptcy Exclusion.[120]

Although this argument has surface appeal, it does not square with the SBA's contemporaneous statements. In the first instance, whereas the First

---

[118] *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, __ U.S. __, 140 S. Ct. 1891, 1905 (2020); *see also Astria Health v. U.S. Small Bus. Admin.*, Adv. No. 20-0016-WHL, 2020 Bankr. LEXIS 1720, at *21 (Bankr. E.D. Wash. June 10, 2020) ("A nonexistent record, by definition, cannot be sufficient to support any conclusion.").

[119] Fourth Interim Rule, 85 Fed. Reg. 24,350, 23,451 (Apr. 28, 2020).

[120] Docket 16 at 17–18 ("[T]he sound value rule remained, and so while underwriting did not apply to the PPP, some requirements were necessary to ensure that loan proceeds were used properly and would be repaid if not.").

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 29 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 29 of 38

Interim Rule mentions streamlining, but fails to connect it to the Bankruptcy Exclusion, the Fourth Interim Rule presents the opposite problem: it mentions the Bankruptcy Exclusion, but does not connect it to the SBA's desire to streamline the loan process. Indeed, in the Court's view, the Fourth Interim Rule's reasoning "bears little relationship to that" of the First Interim Rule (assuming the Court accepts Defendants' contention that the First Interim Rule justifies the Bankruptcy Exclusion on the basis of streamlining).[121] Moreover, the Fourth Interim Rule does not mention, much less rely on, the sound value requirement of § 636(a)(6). Thus, while Defendants take as a given that the Bankruptcy Exclusion flows naturally from the sound value requirement, the Fourth Interim Rule does not expressly state as much. Even assuming it did, however, the First Interim Rule likewise does not mention the sound value requirement or provide any indication that the SBA was concerned with abiding by § 636(a)(6) while simultaneously striving for rapid implementation. In fact, as part of the First Interim Rule, the SBA effectively waived the sound value requirement by assuring lenders they need not abide by the SBA's lending criteria as set forth in 13 C.F.R. § 120.150.[122] Those criteria appear to be the SBA's way of complying with § 636(a)(6), as that regulation specifies that

---

[121] *Regents of the Univ. of Cal.*, 140 S. Ct. at 1908 (concluding that although legal certainty is related to illegality, the two justifications are meaningfully different).

[122] First Interim Rule, 85 Fed. Reg. 20,811, 20,812 (Apr. 28, 2020) ("[F]or loans made under the PPP, SBA will not require the lenders to comply with section 120.150.").

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 30 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 30 of 38

"[l]oans must be so sound as to reasonably assure repayment."[123]  And yet in the First Interim Rule, the SBA expressly waived those criteria for PPP loans.[124] Consistent with this approach, the Third Interim Rule explains that "[t]he Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and the standard underwriting process does not apply because no creditworthiness assessment is required for PPP Loans."[125]  The SBA affirmatively represented that it was unconcerned with creditworthiness, without caveat or other indication that it was striving to balance § 636(a)(6) with its streamlining goal.

Defendants also rely on the Miller Declaration to bolster the link between the First Interim Rule's "streamlining" language and the Bankruptcy Exclusion. Specifically, the Miller Declaration explains that the SBA decided to exclude debtors in bankruptcy because a case-by-case inquiry into the state of their proceedings and the necessary court orders would delay disbursement of funds

---

[123] 13 C.F.R. 120.150's criteria include:  "(a) Character, reputation, and credit history of the applicant (and the Operating Company, if applicable), its Associates, and guarantors; (b) Experience and depth of management; (c) Strength of the business; (d) Past earnings, projected cash flow, and future prospects; (e) Ability to repay the loan with earnings from the business; (f) Sufficient invested equity to operate on a sound financial basis; (g) Potential for long-term success; (h) Nature and value of collateral (although inadequate collateral will not be the sole reason for denial of a loan request); and (i) The effect any affiliates (as defined in part 121 of this chapter) may have on the ultimate repayment ability of the applicant."

[124] *See* First Interim Rule, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020) ("[F]or loans made under the PPP, SBA will not require the lenders to comply with section 120.150.").  Defendants also characterize the "creditworthy requirement" as "flow[ing] from 15 U.S.C. § 636(a)(6)."  Docket 10 at 12.

[125] Third Interim Rule, 85 Fed. Reg. 21,747, 21,751 (Apr. 20, 2020).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 31 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 31 of 38

and frustrate Congress's mandate to provide assistance expeditiously.[126] Mr. Miller also posited that the loans might not be used to "pay . . . employees and maintain operations" if given to debtors because "creditors . . . could assert claims to the PPP loan funds" and interfere with those authorized uses.[127]

Be that as it may, the Court does not consider the Miller Declaration to be part of the administrative record. In *Clifford v. Pena*, the case cited by Defendants in support of their use of the Miller Declaration, the D.C. Circuit affirmed the district court's decision to supplement the record with a declaration by the director of an agency that was offered "to provide the court with background information about the subsidy program and the current state of American shipping industry, information underlying the . . . Administration's decision and well known to the agency and to the parties."[128] In contrast, the Miller Declaration is primarily offered to introduce justifications for the Bankruptcy Exclusion; it is not background information and its assertions are not well known. Indeed, for all the same reasons that the Court finds it implausible that the Fourth Interim Rule purports only to provide additional detail to the reasoning of the First Interim Rule, so too it finds for the Miller Declaration. However, because the Fourth Interim Rule is clearly part of the administrative record, the Court reviews it as part of its analysis, whereas

---

[126] Docket 13-3 at 5, ¶ 17.

[127] Docket 13-3 at 5, ¶ 17.

[128] *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 32 of 38

the Miller Declaration is not part of the administrative record.[129]  Regardless, because the Court concludes that both the Fourth Interim Rule and the Miller Declaration provide post-hoc rationalizations for the Bankruptcy Exclusion, unconnected to the First Interim Rule's language, it cannot consider either in evaluating whether the disputed agency action is arbitrary and capricious.

Moreover, even if the Court considers the justifications given in the Fourth Interim Rule as the contemporaneous explanation for the Bankruptcy Exclusion, it still concludes that the exclusion is arbitrary and capricious.  The SBA does not disclose what data or factors it considered in reaching the conclusions it offers in the Fourth Interim Rule, making it difficult to determine whether the SBA offers a "satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[130]  Nevertheless, the SBA's cursory explanation therein reveals that it failed to consider important aspects of the problem, and that

---

[129] *See PCT Int'l v. Carranza,* Adv. No. 2-20-00118 (Bankr. D. Ariz. June 12, 2020), in this record at Docket 4-1 at 368 (concluding that the Miller declaration "looks like an after-the-fact attempt to explain why that no bankruptcy provision was put in the loan agreement in the first place) and *Tradeways, Ltd. v. U.S. Dept. of the Treasury*, Case No. ELH-20-1324, 2020 WL 3447767, at *15, n.8 (D. Md. June 24, 2020) (reasoning that "'the focal point for judicial review' under the APA 'should be the administrative record already in existence, not some new record made initially in the reviewing court,'" and concluding that "[f]or this reason, the Court does not rely on the Declaration of John A. Miller") (quoting *Camps v. Pitts*, 411 U.S. 138, 142 (1973)).

[130] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S 156, 168 (1962)).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 33 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 33 of 38

its decision is counter to the evidence before the agency and entirely implausible.[131]

First, the SBA failed to consider the protections afforded by the bankruptcy process.[132] For example:

> A debtor in chapter 11 bankruptcy must give notice to interested parties where it intends to borrow money outside the ordinary course of business. If the bankruptcy court permits the debtor to borrow money, the court can impose conditions on the debtor's doing so such as restricting use of the loan proceeds. Moreover, debtors are required to file monthly operating reports detailing the debtor's receipts and disbursements.[133]

Accordingly, debtors are more closely monitored in their use of funds than other businesses, underscoring the arbitrariness of the SBA's decision to exclude them for posing a high risk of misusing the PPP loan funds.[134] Likewise, the SBA failed to consider that in the unlikely event that the debtor did misuse funds, the

---

[131] As Judge Holt stated in *Astria Health v. U.S. Small Bus. Admin.*, the SBA fails to "show [its] work," as there is "basically nothing explaining or developing how the SBA's conclusion was reached, let alone anything supporting it is a substantive policy matter." Adv. No. 20-0016-WHL, 2020 Bankr. LEXIS 1720, at *21–22 (Bankr. E.D. Wash. June 10, 2020).

[132] *Astria*, 2020 Bankr. LEXIS 1720, at *25. ("[T]his conclusion flies in the face of the expansive and persistent supervision of such debtors by the bankruptcy court, the United States Trustee Program via the Department of Justice, creditors. . . . The bankruptcy code contains an array of tools that can make repayment more likely . . . .").

[133] *In re Vestavia Hills, Ltd.,* Adv. No. 20-90073-LA, 2020 WL 3581019, at *9 (Bankr. S.D. Cal. June 26, 2020).

[134] Mr. Miller represents that debtors are never afforded Section 7(a) loans, thus confirming that the agency does not have special expertise or knowledge about the risk of loaning to debtors. Docket 13-3 at 4, ¶ 13.

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 34 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 34 of 38

Bankruptcy Code would give priority to repayment of PPP Loans made to Chapter 11 debtors:

> If a bankruptcy court approves a debtor's postpetition financing motion, the lender is entitled to an administrative expense claim under Bankruptcy Code § 503(b)(1). Administrative expense claims—such as one for a PPP loan—must be paid in full by the effective date of the confirmation.[135]

These protections of the bankruptcy process "are part of the law that every person in the country, including the SBA and everyone who works there is presumed to know, but there was nothing indicating any consideration of these tools by the SBA."[136]

Second, the SBA failed to consider the fact that Congress was not concerned with the risk of non-repayment. Notwithstanding that the PPP is grafted onto Section 7(a), which includes a sound value requirement, the overarching purpose and tenor of the PPP indicates that its loans were intended to be forgiven: "Congress requires no collateral or personal guarantee to obtain a PPP loan, and Congress structured the PPP loans to be completely forgivable so long as the borrower uses the loan proceeds for covered expenses and provides documentation of such to its lender."[137] Simply put, the "PPP loans are designed

---

[135] *In re Gateway Radiology Consultants*, Adv. No. 8:20-ap-00330-MGW, 2020 WL 3048197, at *15 (Bankr. M.D. Fla. June 8, 2020).

[136] *Astria Health v. U.S. Small Bus. Admin.*, Adv. No. 20-0016-WHL, 2020 Bankr. LEXIS 1720, at *25 (Bankr. E.D. Wash. June 10, 2020).

[137] *In re Vestavia Hills, Ltd.,* Adv. No. 20-90073-LA, 2020 WL 3581019, at *8 (Bankr. S.D. Cal. June 26, 2020).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 35 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 35 of 38

to be forgiven," and thus, "Congress did not intend for the SBA Administrator to focus on collectability."[138]   The SBA's later justification for the Bankruptcy Exclusion—that it was concerned with a high risk of non-repayment—ignores the fact that Congress did not want the SBA to so concern itself.   The SBA itself seemingly understood as much when, in the First Interim Rule, it waived its criteria for assuring that "[l]oans must be so sound as to reasonably assure repayment."[139]

Lastly, having reviewed the administrative record such as it exists, the Court finds that the SBA's explanations for implementing the Bankruptcy Exclusion are entirely implausible.  The statement provided in the Fourth Interim Rule is not an explanation of the agency's reasoning; it is a conclusory statement that the SBA did not try to justify or support with facts or citations.  The record is devoid of evidence that debtors are likely to misuse funds or that they pose a heightened risk of non-repayment of those misused funds; in fact, everything about the bankruptcy process makes these concerns far *less* likely.  Moreover, the SBA made no effort to connect these conclusory statements to either of the driving forces repeatedly asserted by Defendants: the sound value requirement or the mandate to streamline the process.  The Court cannot conclude that the SBA examined the relevant data or that it articulated a satisfactory explanation for its

---

[138] *In re Gateway Radiology Consultants*, 2020 WL 3048197, at *14.

[139] *See* First Interim Rule, 85 Fed. Reg. 20811, 20,812 (Apr. 28, 2020) ("[F]or loans made under the PPP, SBA will not require the lenders to comply with section 120.150.").

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 36 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 36 of 38

action; there is no "'rational connection between the facts found and the choice made.'"[140]

In light of the foregoing, the Court finds the Bankruptcy Exclusion is unlawful as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

## B.    5 U.S.C. § 706(2)(C)

AUI also contends that the Bankruptcy Exclusion is unlawful as exceeding the SBA's statutory jurisdiction.  The APA, at 5 U.S.C. § 706(2)(C), provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

Because the Court concludes that the Bankruptcy Exclusion is unlawful under 15 U.S.C. § 706(2)(A), it need not decide the additional question of whether the SBA exceeded its authority under 15 U.S.C. § 706(2)(C).

---

[140] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S 156, 168 (1962)).

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 37 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 37 of 38

**CONCLUSION**

In light of the foregoing, IT IS ORDERED as follows: Plaintiff AUI's Motion for Summary Judgment at Docket 6 is GRANTED pursuant to 5 U.S.C. § 706(2)(A). Defendants' Motion for Summary Judgment at Docket 10 is DENIED.

DATED this 20th day of August, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00170-SLG, *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin., et al.*
Order re Motions for Summary Judgment
Page 38 of 38

Case 3:20-cv-00170-SLG   Document 18   Filed 08/20/20   Page 38 of 38